[S. F. No. 14996. In Bank.—April 11, 1934.]

COMMERCIAL UNION ASSURANCE COMPANY, LTD.
(a Corporation), et al., Appellants, v. PACIFIC GAS
AND ELECTRIC COMPANY (a Corporation) et al.,
Respondents.

516

Percy V. Long and Bert W. Levit for Appellants.

Thomas J. Straub, W. H. Spaulding and Clinton F. Stanley for Respondents.

WASTE, C. J.—This cause was taken over after decision in the District Court of Appeal, First District, Division Two, in order that we might more fully consider certain assignments of alleged error on the part of the trial judge in his conduct of the case. Upon an examination of the entire record, including the evidence, we are satisfied with, and adopt as and for the decision of this court, the following portions of the opinion of the District Court of Appeal, prepared by Mr. Presiding Justice Nourse:

"Plaintiffs are twenty-four fire insurance companies who sued the defendant for loss by fire of a warehouse building and goods stored therein upon which the plaintiffs had satisfied claims for loss. The cause was tried by a jury, which returned a verdict for the defendant. From the judgment following the verdict the plaintiffs have appealed upon typewritten transcripts.

"On May 5, 1931, the warehouse and all its contents were totally destroyed by a fire of unknown origin. Stored therein at the time were 155 reels of copper wire owned by the defendant. All the property destroyed other than that owned by the defendant was insured by one or more of the plaintiff companies. The basis of their action is that for the purpose of saving its own property the defendant broke into the warehouse at a time when the plaintiffs claim that the fire was under control and confined to a small area, and that such entry caused the fire to flare up and pass beyond control. The defense is that when the employees of the defendant entered the warehouse the fire, which had been smouldering for approximately three hours, showed definite signs of being beyond control and that these employees were then convinced that the fire was then incapable of being controlled and that the property of the defendant would be destroyed unless removed from the warehouse.

"The warehouse was located at the town of Irvington in Alameda county. The fire was discovered at the warehouse at about 4 A. M. The town of Irvington had no fire department and calls were made on the adjoining towns of Centerville, Niles, and Mission San Jose. These responded with fire trucks and chemical tanks. The chief of the Centerville department, who was in charge of the operations, located the fire in a small area in the northeast portion of the ware-

house where sacks of beet pulp were stored and in the wooden frame of the skylight immediately above the beet pulp. Firemen entered the building on the east side and opened the skylight for the purpose of throwing water upon the framework and upon the beet pulp underneath. The flame in this portion of the building was put out, but the fire continued to smoulder, filling the warehouse with smoke for a period of approximately two hours thereafter and until the entry of the defendant's employees as hereafter stated. During the course of the operations the fire chief discovered that the water supply was insufficient and ordered the laying of a pipe line to tap an additional water supply about a quarter of a mile away from the warehouse. While he was in charge of this work the employees of the defendant discovered that the fire had broken out underneath the floor of the warehouse and was running into the northwest corner of the building, where defendant's cable was stored. They then asked permission of the owner of the warehouse to enter and remove their property. Some fifteen or thirty minutes after the fire was discovered burning underneath the floor defendant's employees made entry and then discovered it had moved from the beet pulp in the northeasterly corner of the building to the northwest corner, where their cable was stored, so that they were unable to remove the cable through the door by which they had entered. A portion of the wall of the warehouse was therefore removed and four of the 155 reels were rolled through this opening. Other reels had fallen through the burning floor, causing sparks to fly about the workmen, and this, together with the heat from the burning floor, prevented them from making further recovery of defendant's property.

"There is no dispute as to the essential facts involved. Some of the witnesses differed in their opinion as to the question whether the fire was under control or could be controlled by the facilities at hand, but upon the main fact that the fire had extended from the beet pulp and was destroying the floor of the warehouse before defendants entered there is no substantial dispute. In plaintiffs' behalf their witnesses adopted the theory that when defendant's employees opened the door on the northwest corner of the warehouse they caused a draft through

the building which fanned to flame the smouldering fire in the beet pulp, thus causing the total destruction of the building. On defendant's behalf witnesses testified that the fire was completely out of control at the time they entered the building; that it had proceeded along the floor and underneath the building to such an extent that no further effort could save the building and the destruction of its contents. This opinion is based more or less upon the admitted fact that at all times there was an opening on the east wall of the building close to the place where the beet pulp was stored, an open skylight directly above the beet pulp, and an opening under the eaves three or four inches high all around the building. It was also undisputed that smoke was pouring out of all these openings from 4:00 a. m. until about 7:30 a. m., when defendant's employees entered the building.

"Disregarding the opinions and theories of the various witnesses and confining the case strictly to the undisputed evidence, the single question that was presented to the jury was whether the defendant, in its efforts to protect its own property, believed and had reasonable grounds for believing that its property was in danger of destruction unless removed and whether the acts of defendant's employees in this connection were reasonable and proper under the circumstances. On the issue of law involved the briefs are singularly void in the citation of authority and long in the repetition of the testimony of witnesses. It should be unnecessary to say that this court cannot review this testimony for the purpose of passing on the credibility of the witnesses heard by the jury. Our only interest is to determine whether there is substantial evidence to support the verdict. The appellants do not claim that there is not substantial evidence for that purpose and in view of the record this claim could not be made.

■ "On the main issue the rule is stated in 45 Corpus Juris, page 712, that 'Where an emergency arises involving danger to one's property, he is justified in attempting to save the same, and if he acts with reasonable prudence in the endeavor to rescue or protect his property he is not liable for resulting injury to property of another.' *Owen v. Cook*, 9 N. D. 134 [81 N. W. 285, 47 L. R. A. 646], is cited in support of the statement. That was a case where

the defendants started' a back fire to save their homes from destruction by an approaching prairie fire. The plaintiff claimed that the back fire spread beyond the main fire and caused the destruction of his property. The supreme court of North Dakota held that the acts of the defendants were not negligent but that they had the right to take such steps for° the protection of their own property as were reasonable and proper under the circumstances. *Valentine* v. *Minneapolis, St. P. & S. S. M. Ry. Co.*, 155 Mich. 151 [118 N. W. 970], is cited by the appellants. In that case certain forest products of the plaintiff and freight cars of the defendant were on fire. The plaintiff owned other forest products which it claimed were safe from fire. The defendant moved one of its burning cars along its track where these products were located and they were 'destroyed by a fire coming from this burning car of the defendant. The defendant did not justify its removal of the burning car for the purpose of saving its own property, but relied upon the defense that the property of the plaintiff would have been destroyed in any event. The real point of the Valentine case is that upon the issues so formed it was a simple question for the jury to determine whether defendant's act in moving its burning car was reasonable and prudent and whether the defendant had sustained the burden of proof of its issue—that plaintiff's property would have been destroyed notwithstanding the acts of the defendant complained of. *Latta* v. *New Orleans etc. Ry. Co.*, 131 La. 272 [59 So. 250, Ann. Cas. 1914A, 988], also cited by appellants, is not helpful. There the court held that in determining the liability of one who destroys the property of another to save his own, consideration should be given to the relative values and the comparative ability of the sufferers to bear the loss. This is a doctrine to which we need not subscribe, as the case is to be controlled by other issues.

"Appellants complain of the following instruction: 'If you find that defendant's employees believed and had reasonable grounds for believing that defendant's copper wire and reels were in danger of destruction if left in the warehouse here in question, then I instruct you that defendant's employees had the right to enter said warehouse and use all reasonable means to remove said wire and reels therefrom, and if you find that defendant's employees acted

as ordinarily reasonable and careful men would act under such circumstances in endeavoring to remove said wire and reels from the warehouse, then I instruct you that the defendant was not negligent.' It is argued that the instruction is erroneous because it excused respondent if the entry of the warehouse had been made after respondent's employees believed and had reasonable grounds for believing that respondent's property was in danger of destruction unless removed. It is also argued that there is error in the instruction because it failed to note the provisions of the Penal Code preventing obstruction of firemen in their attempt to extinguish fires. We do not believe that the instruction is susceptible to either attack. ▆ We must bear in mind that the action is one for negligence and not one based upon acts of premeditation and formed intention. The jury was instructed that negligence is the omission to do something which an ordinarily careful and prudent person would have done under the same or similar circumstances, or doing something which such a person would not have done in the same situation; that in determining whether one exercises ordinary care the jury should consider all the facts proved and all the surrounding circumstances and say whether the conduct of the defendant was that of a person of ordinary prudence and discretion under such circumstances. Having cast their case in negligence the appellants committed to the jury the duty of determining whether under all the facts and surrounding circumstances the conduct of defendant's employees was that of persons of ordinary prudence and discretion and this is all that the instruction complained of advises the jury to do. Manifestly, if respondent's employees did not believe that respondent's property was in danger of destruction they had no right to enter the warehouse because to do so under such circumstances would have been a trespass. The instruction does not nullify the provisions of Penal Code section 385 as claimed by appellants. The giving of the chief's orders to keep the warehouse closed and the revocation of those orders was a question which was sharply disputed in the evidence. If the jury believed the testimony of respondent's witnesses on this point and then found that in entering the warehouse respondent's employees 'acted as ordinary reasonable and careful men would act under the

circumstances', the jury would have found that the respondent was not negligent in that respect and that was all that was covered by this instruction. If the appellants had desired an instruction on the Penal Code section they should have requested it.

█ "Criticism is made of the instruction reading: 'In order to find a verdict for plaintiffs you must find two separate facts; first, that defendant, in its endeavors to save its property was negligent and careless, and second you must also find that if defendant had not so endeavored to save its property then the building and its contents would not have been destroyed but would have been saved.' It is argued that this instruction casts too great a burden upon the appellants, that the jury should have been instructed that it was necessary to find nothing more than that 'the building might have been saved' if respondent's employees had not made the entry complained of. █ It is said that such an instruction would have permitted the jury to speculate and thus to return a verdict for the appellants if it believed that it was possible that the building might have been saved but for respondent's act. *Houren* v. *Chicago, M. & St. P. Ry. Co.*, 236 Ill. 620 [86 N. E. 611, 127 Am. St. Rep. 309, 20 L. R. A. (N. S.) 1110], is cited to the point. That was a case where a railroad train had been left standing across a public highway, thereby preventing the fire department from approaching a fire burning on property on the other side of the track. Plaintiff was allowed recovery against the railroad company on the theory that the property might have been saved if the fire department had not been delayed by the standing train. We had occasion to consider a similar question in *Hanlon D. & S. Co.* v. *Southern Pac. Co.*, 92 Cal. App. 230, 234 [268 Pac. 385], where other cases to the same point are cited. The rule of these cases is that the *unexplained* blockading of the fire department and interference in its endeavors to control the fire makes a *prima facie* case of negligence in favor of the plaintiff whose property was destroyed by the fire. It is not the rule that damages may be awarded upon mere conjecture or surmise or that plaintiffs' burden of proving the actual damages sustained by the acts complained of is in anywise lessened. . . .

■ ''Criticism is made of the rulings of the trial court in excluding testimony of witnesses as to what the fire chief told them relative to keeping the building closed. The rulings were made excluding testimony which would have been mere hearsay, but the appellants were not harmed because all the evidence which they sought to produce through these witnesses was properly tendered and received at other stages of the trial. ■ Appellants complain of the ruling excluding the testimony of the fire chief as to his opinion whether the fire was under control 'during the time that the pipe was being laid'. The answer was properly excluded because the chief was shown to have been absent from the place of the fire during a large part of the time when this pipe was being laid. ■ Another member of the fire department was asked if in his opinion the fire was under control. The court sustained the objection as to the form of the question stating that the witness could tell what effect, if any, the opening of the wall by the respondent had upon the extension of the fire. There was no error in the ruling. . . . ''

■ We find no error in the giving of the instruction on contributory negligence. The issue was brought in to the case by way of affirmative defense. In support of its allegations thereon the defendants introduced evidence tending to show that the destroyed warehouse had been built more than forty years, had been of wooden frame construction with a wooden floor, and that at the time of the fire had contained many sacks of grain, feed, beet pulp, and other readily inflammable products. Without passing upon the weight or sufficiency of this evidence, we are satisfied that its presence warranted the giving of the instruction now assailed.

■ Appellants complain of a ruling limiting their cross-examination of an expert witness. The hypothetical question to which an objection was sustained not only failed to state the facts as shown by the evidence, but assumed facts contrary to the uncontradicted and established facts of the case. The question was not propounded to test the qualifications of the witness. Under the circumstances, and in view of the discretion vested in a trial court in this particular, we find no impropriety in the ruling. (*Roche* v. *Baldwin*, 143 Cal. 186, 192 [76 Pac. 956]; *MacCoy* v. *Gage*,

38 Cal. App. 672, 674 [177 Pac. 296].) Moreover, appellants by their next succeeding, and properly framed, question achieved the desired result.

In conclusion, we are satisfied from an examination of the entire record that the trial court was not guilty of prejudicial misconduct by reason of certain remarks complained of by the appellants. A trial judge is not to be unduly and unreasonably hampered and restricted in the exercise of control over the proper examination of witnesses and the conduct of the trial generally. Considerable latitude is, and must be, accorded to him in this regard. We fail to discover wherein the trial judge in the present case exceeded the bounds, to the prejudice of the appellants.

The judgment is affirmed.

Curtis, J., Shenk, J., Thompson, J., Tyler, J., *pro tem.*, and Knight, J., *pro tem.*, concurred.